IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDDIE VALDEZ and ANNA GARCIA,

            Plaintiffs,

vs.                                                                    No. CIV 13-1239 JB/KK

HOME DEPOT USA, INC.,

            Defendant.

### MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Summary Judgment and Memorandum in Support, filed May 7, 2015 (Doc. 39)("Motion"); and (ii) the Plaintiffs' Motion to Vacate Trial, filed June 15, 2015 (Doc. 43)("Motion to Vacate").  The Court held a hearing on July 10, 2015.  The primary issues are: (i) whether Ford v. Board of County Commissioners of the County of Dona Ana, 1994-NMSC-077, 879 P.2d 766 ("Ford"), changed the duty that employers owe to employees of independent contractors injured on the employer's premises, which the State Court of New Mexico set forth in Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d 1351, 1356; (ii) whether Plaintiffs Eddie Valdez and Anna Garcia can establish that Defendant Home Depot USA, Inc. breached its duty of care to the independent contractor's employee; and (iii) whether the Plaintiffs can show good cause to vacate the trial.  First, the Court finds that Ford did not change the duty that employers owe to employees of independent contractors; employers have only a duty to provide a safe work place as long as they retain some measure of control over the premises or the work performed.

---

[1]The Court entered an Order disposing of the Motion on July 18, 2015.  See Order, filed July 18, 2015 (Doc. 56).  In the Order, the Court stated that it would, "at a later date, issue a Memorandum Opinion more fully explaining its rationale."  Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

Second, using this standard, the Plaintiffs cannot establish that Home Depot owed Valdez a duty

of care.  Third, the Plaintiffs cannot establish good cause to vacate the trial.  Accordingly, the

Court will grant the Motion and deny the Motion to Vacate.

## FACTUAL BACKGROUND

Valdez and Garcia assert a general negligence claim against Home Depot for injuries that

Valdez allegedly sustained at a Home Depot store in Albuquerque, New Mexico.  See Complaint

for Negligence and Damages ¶¶ 25-28, at 4, filed in federal court December 30, 2013 (Doc. 1-2

B-2)("Complaint").  On August 27, 2009, Valdez worked as a full-time employee of Crossmark

Holdings, Inc.   See Motion ¶¶ 1-2, at 2 (setting forth this fact); Plaintiffs' Response

Memorandum to Defendant's Motion for Summary Judgment and Memorandum in Support ¶ 1,

at 2, filed June 12, 2015 (Doc. 42)("Response")(not disputing this fact).   Home Depot hired

Crossmark Holdings -- an independent company -- "to dismantle and reconfigure racking

systems for displaying merchandise, also known as re-setting."  Motion ¶ 3, at 2 (setting forth

this fact).  See Response ¶ 1, at 2 (not disputing this fact).   Valdez worked for Crossmark

Holdings for approximately five months before the accident, during which time he worked in

"dozens of Home Depot stores."  Motion ¶ 4, at 3 (setting forth this fact).  See Response ¶ 1, at 2

(not disputing this fact).  Crossmark Holdings hired Valdez to perform various tasks, which

included disassembling racking, moving merchandise, and rebuilding the racking in a new way.

See Motion ¶ 5, at 3 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).

Crossmark Holdings provided Valdez with a pamphlet when he became a full-time

employee with rules regarding safety information.  See Motion ¶ 25, at 5 (setting forth this fact);

Response ¶ 1, at 2 (not disputing this fact).  Crossmark Holdings provided Valdez with most of

his necessary work tools, but Valdez had to bring his own belt and some tools.  See Motion ¶ 26, at 5 (setting forth some of this fact); Response ¶ 6, at 3 (disputing that Valdez had to bring his own belt and some tools).  Home Depot did not furnish any tools to use in his work.  See Motion ¶ 26, at 5 (setting forth some of this fact); Response ¶ 6, at 3 (asserting that Valdez had to bring his own belt and some tools).  Crossmark Holdings also "dictated what type of shoe wear was to be worn, and provided on-the-job day-to-day safety training."  Motion ¶ 26, at 5 (setting forth this fact).  See Response ¶ 6, at 3 (not disputing this fact).  Valdez answered to Jones and not to Home Depot employees.  See Motion ¶ 27, at 5 (setting forth this fact).[2]  Home Depot employees did not supervise Crossmark Holdings employees or the worksite to ensure that they were performing their work safely.  See Motion ¶ 28, at 5 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).

Valdez' supervisor, Kevin Jones, instructed him on what work to perform at each Home Depot store.  See Motion ¶¶ 6-7, at 3 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).  Jones gave Valdez instruction sheets and verbal instructions.  See Motion ¶ 7, at 3 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).  On August 27, 2009, Valdez and his crew member David were moving overstock cabinets stacked on the top shelf to pull out washers behind them, and then move the washers down to the ground floor.  See Response ¶ 2, at 2 (setting forth this fact); Defendant Home Depot U.S.A., Inc.'s Reply to Plaintiffs' Response to

---

[2]The Plaintiffs dispute this fact.  They argue that Valdez also listened to Home Depot employees' directions.  See Response ¶ 7, at 3.  Home Depot's material fact, however, does not state that Valdez did not follow Home Depot employees' directions.  Rather, it states that Valdez did not answer to them as his boss.  The record evidence supports Home Depot's factual assertion.  See Valdez Depo. at 52:23-25 (Smith: "The bottom line is that you don't answer to those Home Depot people; you answer to Kevin.  Right?"  Valdez:  "Yes.").  Valdez stated that he would follow Home Depot employees' directions when they related to the work Crossmark required him to perform.  See Valdez Depo. at 95:5-96:25 (Smith, Valdez).

Motion for Summary Judgment at 5, filed June 26, 2015 (Doc. 54)("Reply")(not disputing this fact); Deposition of Eddie Valdez at 16:4-10 (taken January 15, 2015), filed June 6, 2015 (Doc. 39-1)("Valdez Depo.")(Valdez).   The cabinets and washers were located on the top shelf of a vertical racking system.   When Valdez entered the area where a vertical racking system was located, David was already on the top shelf.   <u>See</u> Motion ¶ 9, at 3 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).   Valdez did not know, nor did he ask, how David got up to the top shelf, "but he assumed David had used an order picker."[3]   Motion ¶ 10, at 3 (setting forth this fact).   <u>See</u> Response ¶ 1, at 2 (not disputing this fact).

Valdez "asked an unidentified Home Depot employee to lift him up to the top shelf with an order picker, but the employee refused."   Motion ¶ 11, at 3 (setting forth this fact).   <u>See</u> Response ¶ 1, at 2 (not disputing this fact).   Valdez "was not trained to operate an order picker" and "knew he was not supposed to operate it."   Motion ¶¶ 12-13, at 4 (setting forth this fact). <u>See</u> Response ¶ 1, at 2 (not disputing this fact).   He knew that Jones could operate an order picker, but did not try to locate Jones.   <u>See</u> Motion ¶ 14, at 4 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).   Consequently, Valdez "lifted himself up to the top shelf by operating the order picker."   Motion ¶ 15, at 4 (setting forth this fact).   <u>See</u> Response ¶ 1, at 2 (not disputing this fact).   "This was the Plaintiff's first time being that high in the racking."

---

[3]An order picker is a forklift-style device that lifts an individual up to three stories above ground, and allows him or her to pick up objects stored on higher shelves and transport them to the ground level. <u>See</u>, <u>e.g.</u>, CROWN SP SERIES ORDER PICKERS, http://www.crown.com/usa/forklifts/stockpickers-sp-overview.html#performance (last visited November 20, 2015).

Response ¶ H, at 5 (setting forth this fact).[4]  He asked an unidentified Home Depot employee for a harness, but the employee told Valdez that he did not have one that would fit him because of his size.  See Motion ¶ 16, at 4 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).  Home Depot did not have a harness that would fit Valdez.  See Reply at 5 (setting forth this fact).[5]

When Valdez reached the top shelf, there were overstock cabinets sitting in front of the washers that he needed to move.  See Response ¶ 2, at 2 (setting forth this fact); Reply at 5.  Home Depot was responsible for clearing the area in which Valdez would be working, removing stock from the area, and preparing for Valdez to do his job.  See Response ¶ B, at 4 (setting forth this fact).[6]  Because the area was not cleared, Valdez' assigned tasks took more time and he felt "rushed" to complete his job.  See Response ¶ C, at 4 (setting forth this fact).[7]  Home Depot

---

[4]Home Depot does not dispute Valdez' factual assertion.  It clarifies that Valdez "admit[ted] that he had worked high in the racking before."  Reply at 8.  Because Home Depot does not dispute this factual assertion, the Court deems it undisputed that, although Valdez had worked high in the racking before this incident, this event was his first time being that high in the racking.

[5]The Plaintiffs argue that Home Depot had a harness that would fit Valdez but refused to provide it to him.  See Response ¶ G, at 4-5.  The record evidence demonstrates that the Plaintiffs are incorrect.  Valdez admits that Home Depot did not have a single harness to fit him, so he planned to take two and hook them together.  See Valdez Depo. at 92:9-15 (Valdez).

[6]Home Depot does not dispute this fact.  The local rules of civil procedure require the movant, in its reply, to "contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. . . .  All material facts set forth in the Response will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56(b).  Because Home Depot does not dispute this fact, the Court deems it undisputed.

[7]Home Depot does not dispute this factual assertion.  Rather, it clarifies that Valdez' supervisor Jones -- not Home Depot -- pressured Kevin to finish projects on time.  See Reply at 7.

pushed Jones to complete projects quickly, and Jones would encourage Crossmark employees to complete jobs within certain time limits.  See Reply at 7 (setting forth this fact).[8]

When Valdez reached the top shelf, he began moving cabinets to access the washers.  See Motion ¶ 18, at 4 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).  "The shelving consisted of wooden boards laid across an iron perimeter."  Motion ¶ 19, at 4 (setting forth this fact).  See Response ¶ 1, at 2 (not disputing this fact).  When Valdez reached the shelf, he thought the shelves did not look strong and warned David to be careful.  See Response ¶ 4, at 2-3 (setting forth this fact).[9]  He stated: "[T]hese boards that are on these racks, they're -- they don't look too strong."  Response ¶ 4, at 3 (citing Valdez Depo. at 48:12-16)(Valdez)).  Home Depot employees cut the wood shelving on the racks on which Valdez stood.  Sometimes, if not cut perfectly, they would leave gaps between the boards of wood.  See Response ¶ D, at 4 (setting forth this fact).[10]  Because of the potential for gaps between the wooden board, "[Valdez] was also aware that he needed to maintain a conscious awareness of where he was in relation to

---

[8]The Plaintiffs assert that "Home Depot required that the work CrossMark and the Plaintiff were doing be done quickly."  Response ¶ A, at 3-4.  The record evidence does not support this factual assertion.  It supports only that Home Depot encouraged Jones to complete projects quickly.  See Valdez Depo. at 172:7-11 (Smith: "Did you have a time limit in which to complete that job?"  Valdez: "Kevin was always pushing us, because Home Depot would always tell him they had to get it done by a certain time.").

[9]The Plaintiffs dispute Home Depot's factual assertion that Valdez "knew" the shelves were not strong.  Pursuant to the local rules of civil procedure in federal court, the Plaintiffs support their assertion that he only "thought" the shelves were not strong with deposition testimony.  See Valdez Depo. at 48:12-16 (Valdez).  Viewing the facts in the light most favorable to the Plaintiffs, the Court therefore deems the Plaintiffs' version of this factual assertion undisputed.

[10]Because Home Depot does not dispute this fact, the Court deems it undisputed.  See D.N.M.LR-Civ. 56(b).

the holes, as not to fall."  Motion ¶ 21, at 4 (setting forth this fact).  See Response ¶ 1, at 2 (not disputing this fact).

After several minutes on the top shelf, Valdez lifted a large, heavy cabinet and pressed his face against the cabinet so he could not see side to side.  See Motion ¶ 24, at 5 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).  While moving the cabinet, Valdez stepped sideways, and one of the boards on which he was standing moved, causing him to plant his foot in a place with nothing underneath it.  See Motion ¶ 22, at 4 (setting forth this fact); Response ¶ 5, at 3 (disputing portions of this fact).[11]  Valdez fell through the shelving and landed on a beam one shelf below, hitting his groin.  See Motion ¶ 23, at 5 (setting forth this fact); Response ¶ 1, at 2 (not disputing this fact).

## PROCEDURAL BACKGROUND

The Plaintiffs filed the action against Home Depot on August 13, 2012 in the Second Judicial District Court, County of Bernalillo, State of New Mexico.  See Valdez v. Home Depot U.S.A., Inc., D-202-CV-2012-07455 ("State Court Action").  They did not serve Home Depot with their Complaint, so the state court dismissed the Complaint for lack of prosecution on March 26, 2013.  See Valdez v. Home Depot U.S.A., Inc., Disposition Order for Lack of Prosecution, filed in state court March 26, 2013, filed in federal court December 30, 2013 (Doc.

---

[11]The Plaintiffs dispute this fact, arguing that Valdez did not step into a crack between the boards.  They argue that a board on which he was standing moved and caused him to fall.  See Response ¶ 5, at 3.  The evidence in the record partially supports the Plaintiffs' factual assertion. The evidence shows that Valdez was carrying a cabinet, stepped sideways into a place with nothing underneath him, and then fell, as Home Depot suggests.  See Valdez Depo. at 58:24-59:2 (Smith, Valdez); id. at 67:10-68:5 (Smith, Valdez); id. at 163:15-164:3 (Smith, Valdez).  It also shows that the board moved, as the Plaintiffs suggest.  See Valdez Depo. at 51:24-52:2 (Valdez). Viewing the facts in the light most favorable to the Plaintiffs, the Court concludes that the board moved.

1-2 B-4)   The Plaintiffs then filed a motion to reinstate the State Court Action on April 29, 2013, see Valdez v. Home Depot U.S.A., Inc., Motion to Set Aside Disposition Order for Lack of Prosecution, filed in state court April 29, 2013, filed in federal court December 30, 2013 (Doc. 1-2 B-5), which the court granted, so they re-filed the State Court Action on August 23, 2013.  See Valdez v. Home Depot U.S.A., Inc., Order on Motion to Set Aside Disposition Order for Lack of Prosecution, filed in state court August 16, 2013, filed in federal court December 30, 2013 (Doc. 1-2 B-9).  Home Depot filed its original Answer in the State Court Action on October 7, 2013. See Valdez v. Home Depot U.S.A., Inc., Defendant Home Depot U.S.A., Inc.'s Answer to Plaintiffs' Complaint for Negligence and Damages, filed October 7, 2013, filed in federal court December 30, 2013 (Doc. 1-2 B-11).   Home Depot removed the case to federal court on December 30, 2013.   See Defendant Home Depot U.S.A., Inc.'s Notice of Removal, filed December 30, 2013 (Doc. 1).

### 1.      The Motion for Summary Judgment.

Home Depot argues that it is entitled to summary judgment because the "undisputed evidence establishes that Crossmark was an independent contractor."  Motion at 7.  It argues that New Mexico law establishes that, in negligence cases, the defendant owes the plaintiff a duty of care.  See Motion at 7.  The employer of an independent contractor, they argue, is not liable for injuries the independent contractor sustains.  See Motion at 7-8.  Home Depot admits that there are exceptions to the rule in the following situations: (i) where the employer controls the premises on which the work is being performed; and (ii) where the employer retains control over the independent contractor's performance.   See Motion at 8.   With respect to the second exception, Home Depot argues that the Plaintiffs cannot recover because Home Depot did not

retain control over the independent contractor Crossmark Holdings, or its employee, Valdez.  See
Motion at 8-9.

With respect to the first exception, Home Depot argues that the Plaintiffs cannot recover
based on the condition of the premises because Valdez cannot show that Home Depot "should
have expected that the employee would not discover or realize the danger[ous condition], or
would fail to protect himself against it."  Motion at 10.  Home Depot contends that, even if an
unsafe condition existed, Valdez "knew of the condition and chose not to take the ordinary
precautions to protect himself."  Motion at 10.  Thus, Home Depot argues that the Plaintiffs
cannot prove an essential element of their claim, entitling Home Depot to summary judgment as
a matter of law.

The Plaintiffs responded to the Motion on June 12, 2015.  See Response at 1.  They first
assert that Home Depot is liable, not because it "retained the right to control the Plaintiff," but
because Home Depot "failed to keep its premises safe for the Plaintiff as a visitor."  Response at
6.  Thus, they admit that Home Depot is not liable on the grounds that it retained control over
Valdez' performance of his work.  They next contend that New Mexico law on premises liability
establishes that a landowner owes both business licensees and business visitors the same duty of
care: "to keep the premises safe for use by the visitor."  Response at 6.  The Plaintiffs argue that
this duty applies even if the visitor knew of the dangerous condition.  See Response at 6.  Next,
they argue that Home Depot's Motion "does not claim that Plaintiff has failed to show facts that
establish breach of its duty."  Response at 8.  They argue that their additional facts "raise
material facts preventing summary judgment."  Response at 8.  These facts include: (i) Home
Depot's alleged failure to provide sufficient time for Valdez to complete his tasks; (ii) Home

Depot's use of shelving and boards that were not properly aligned and therefore left gaps; (iii) Home Depot's failure to instruct Valdez to use the order picker; and (iv) Home Depot's failure to provide a safety harness to Valdez.  See Response at 8.  Finally, they contend that, even if Valdez "was partially negligent," "it is for a jury to compare the negligence of all parties and determine the percentage of fault."  Response at 8.

Home Depot replied on June 26, 2015.  It argues that the Plaintiffs incorrectly state the duty of care a premises owner owes to an independent contractor's employee.  See Reply at 1. Home Depot asserts that Ford, the case the Plaintiffs cite as establishing the duty of care, is irrelevant.  See Reply at 2.  "Home Depot does not dispute that the Ford standard is applicable to garden-variety premises liability cases.  If the present matter involved a customer of Home Depot who was hurt while shopping, Ford would be applicable."  Reply at 2.  Home Depot contends, however, that because this case involves the employee of an independent contractor, the Ford standard does not apply.  See Reply at 2.

It also notes that the "Response expressly concedes that Home Depot is not even being accused of having control over the work of Valdez."  Motion at 1.  Accordingly, Home Depot contends that the "Plaintiffs have conceded the one true marker of whether or not Home Depot owed a duty of care to Valdez."  Reply at 3.  Based on the undisputed facts reflecting Home Depot's lack of control over Valdez, Home Depot asserts that it is entitled to summary judgment as a matter of law.  See Reply at 6-7.

The Court held a hearing on July 10, 2015.  <u>See</u> Transcript of Hearing (taken July 10, 2015)("Tr.").[12]  Home Depot pointed to <u>Requart v. Brophy</u>, 1990-NMCA-116, 801 P.2d 121, as establishing the duty that a landowner owes to employees of an independent contractor.  <u>See</u> Tr. at 2:7-11 (Smith).  Home Depot asserted that <u>Ford</u> does not apply.  <u>See</u> Tr. at 4:7-23 (Smith).  Home Depot emphasized that the Plaintiffs are not seeking to impose liability on the basis that Home Depot controlled Valdez.  <u>See</u> Tr. at 3:1-3 (Smith).  It asserted that proof of control is an essential element that the Plaintiffs must prove, even under premises liability.  <u>See</u> Tr. at 3:4-10 (Smith).  It contended that the Plaintiffs "must show that the owner retained at least some specific control over the premises during the performance of the work or over the instrumentality that proximately caused the employees' injury."  Tr. at 3:10-15 (Smith).

Home Depot then discussed how the Plaintiffs could not prove the elements of their claim.  First, it argued that the Plaintiffs "admit that there was no control over the work or that specific location."  Tr. at 8:11-13 (Smith).  Second, Home Depot argued that it could not have known that the work involved an unreasonable risk of danger.  <u>See</u> Tr. at 10:5-24 (Smith).  Although it was aware that the work involved a risk, it argued that this risk was not unreasonable because the work was no different from the work performed at the other thousands of stores across the country.  <u>See</u> Tr. at 10:5-24 (Smith).  Finally, Home Depot contends that the Plaintiffs cannot show that they were unaware of the risks.  <u>See</u> Tr. at 10:15-11:4 (Smith).

In response, the Plaintiffs argued that they never admitted that Home Depot "had no control over the premises."  Tr. at 14:16-18 (Doyle).  Rather, they argued, they conceded that

---

[12]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different pages and/or line numbers.

Home Depot did not control Valdez.  <u>See</u> Tr. at 14:18-21 (Doyle).  Next, they asserted that <u>Ford</u> provides the duty that Home Depot owed to Valdez.  They argued that in <u>Ford</u>, the Supreme Court of New Mexico moved to a single standard of care for all entrants onto a landowner's premises.  <u>See</u> Tr. at 17:1-2 (Doyle).  It extended a duty of maintaining property in a reasonably safe condition to all persons other than trespassers.  <u>See</u> Tr. at 17:10-22 (Doyle).  They argued that a "visitor is a person who enters or remains upon a premises with the express or implied permission of the owner," which is what Valdez was.  Tr. at 19:20-14 (Doyle).  Accordingly, they contended that Home Depot breached its duty to maintain the property in a reasonably safe condition.  <u>See</u> Tr. at 21:10-25 (Doyle).

Home Depot argued that <u>Ford</u> dealt with the standard of care to customers or "people who were visiting to conduct business."  Tr. at 25:17-21 (Smith).  Before <u>Ford</u>, Home Depot noted that New Mexico had a "body of law that dealt with licensees, public invitees, and business invitees," as well as trespassers.  Tr. at 25:17-22 (Smith).  Home Depot asserted that all <u>Ford</u> did was "eliminate the distinction between a public invitee, a business invitee, and a licensee."  Tr. at 25:25-26:2 (Smith).  Thus, Home Depot argued that <u>Ford</u> did not address independent contractors or include them in the categories of individuals.  <u>See</u> Tr. at 26:10-14 (Smith).  Furthermore, Home Depot pointed to precedent decided after <u>Ford</u> that maintained the distinction.  <u>See</u> Tr. at 26:15-18 (Smith).  Home Depot also argued that gaps between boards do not constitute a dangerous condition.  <u>See</u> Tr. at 27:12-19 (Smith).  The Court noted that "it sounds like there is no genuine issue of material fact precluding the Court ruling on the control issue."  Tr. at 35:13-15 (Court).

2. **The Motion to Vacate.**

The Court has set the trial for August 17, 2015. See Tr. at 2:10-13 (Court). The Plaintiffs filed the Motion to Vacate on June 15, 2015. They request that "the Court vacate and reset the trial of this matter" for two main reasons. Motion to Vacate at 1. First, Valdez is still in the hospital being treated for Carbapenem-Resistant Enterobacteriaceae[13] ("CRE") and is not scheduled to leave until June 22, 2015 at the earliest. See Motion to Vacate ¶¶1-3, at 1. They argue that he "will not be in an appropriate condition to prepare for or attend the trial of this matter." Motion to Vacate ¶ 5, at 2. Second, the Plaintiffs argue that Valdez needs additional time to review requested hospital records that he has not yet received, to communicate with doctors about the information, and to supplement disclosures with the updated information. See Motion to Vacate ¶¶ 7-8, at 2. The Plaintiffs state that with this new information, they intend to determine "whether the incident at issue was a cause of the injuries that Plaintiff Eddie Valdez was hospitalized for on February 11, 2015." Motion to Vacate ¶ 8, at 2.

Home Depot responded on June 16, 2015. See Defendant's Combined Response to Plaintiffs' Motions to Vacate Settlement Conference and Telephonic Pre-Settlement Conference and to Vacate Trial at 1, filed June 16, 2015 (Doc. 46)("Response to Motion to Vacate"). It argues that "[f]our years and ten months" have passed since Valdez' alleged injury, giving the Plaintiffs more than enough time to discover the cause of his alleged injuries. Response to Motion to Vacate at 2. It contends that it has been "almost three years since the last medical record produced in this case evidences any treatment for a condition alleged to be related to the

---

[13]CRE "are a family of germs that are difficult to treat because they have high levels of resistance to antibiotics." *Carbapenem-resistant Enterobacteriaceae in Healthcare Settings*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Feb. 23, 2015), http://www.cdc.gov/HAI/organisms/cre/index.html.

Home Depot incident." Response to Motion to Vacate at 2. Accordingly, it argues that it is unlikely that postponing trial will enable the Plaintiffs to uncover more pertinent information. See Response to Motion to Vacate at 2-3. Additionally, Home Depot contends that it is highly unlikely that Valdez' current condition resulted from the incident because, as of March 5, 2014, his medical records disclosed no leg ulcer. See Response to Motion to Vacate at 3.

The Court held a hearing on June 22, 2015. See Transcript of Hearing (taken June 22, 2015)("Motion to Vacate Tr."). The Court noted that the "movant has the burden of showing good cause to have the trial and the pretrial conferences vacated." Motion to Vacate Tr. at 2:16-19 (Court). The Court also noted that it was too speculative whether Valdez' injuries stemmed from his fall at Home Depot, so these injuries were likely insufficient to constitute good cause to vacate the trial. See Motion to Vacate Tr. at 3:5-9 (Court).

The Plaintiffs argued that Valdez was "still under intensive home care for his wound, and under strong medications," even though the hospital released him. Motion to Vacate Tr. at 4:12-15 (Doyle). They contended that good cause existed to vacate the trial to give them the chance to determine whether Valdez' fall at Home Depot caused his current injuries. See Motion to Vacate Tr. at 4:19-23 (Doyle). The Court stated that the Plaintiffs should first determine whether Valdez' fall caused his injuries before moving to vacate the trial. See Motion to Vacate Tr. at 5:1-6 (Court). Because there was no basis to vacate the trial, the Court denied the Motion to Vacate. See Motion to Vacate Tr. at 8:5-8 (Court). The Court noted that "[g]ood cause may develop if the plaintiffs get their medical records and an expert looks at them and thinks that there is a causal connection between the accident and the current hospitalization." Motion to Vacate Tr. at 8:7-11 (Court). To avoid speculating on the cause issue, the Court therefore denied

the Motion to Vacate without prejudice to the Plaintiffs renewing if they discover evidence that

links Valdez' fall to his current illness.  See Motion to Vacate Tr. at 8:18-20 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the

initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving

party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)

(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th

Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the *moving* party will

bear the burden of persuasion at trial, that party must support its motion with credible evidence --

using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if

not controverted at trial."  Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)

(emphasis in original).[14]  Once the movant meets this burden, rule 56 requires the nonmoving

party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp.

v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts

showing that there is a genuine issue for trial as to those dispositive matters for which it carries

the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d

---

[14]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that

something will turn up at trial.'"   Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."   Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.   A mere "scintilla" of evidence will not avoid summary judgment.   Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).   Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.   "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."   Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).   Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.   First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.   See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.   Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have

believed him.   The Court of Appeals should not have relied on such visible
fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the
> litigation, a plaintiff's version of the facts must find support in the record: more
> specifically, "[a]s with any motion for summary judgment, when opposing parties
> tell two different stories, one of which is blatantly contradicted by the record, so
> that no reasonable jury could believe it, a court should not adopt that version of
> the facts."   York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)
> (quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v.
> Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted).   "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[15]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

---

[15]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished
opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R.
32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive
value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court
finds that Rhoads v. Miller and Hicks v. Kollar Construction, Inc., 2012 WL 1724685 (N.M. Ct.
App. April 19, 2012), have persuasive value with respect to material issues, and will assist the
Court in its preparation of this Memorandum Opinion and Order.

testimony[.]"    Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)

(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we
> take the facts "in the light most favorable to the party asserting the injury." Scott
> v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the
> plaintiff's version of the facts," id. at 378, unless that version "is so utterly
> discredited by the record that no reasonable jury could have believed him," id.
> at 380.   In Scott, the plaintiff's testimony was discredited by a videotape that
> completely contradicted his version of the events.  550 U.S. at 379.  Here, there is
> no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads'
> testimony. There is only other witnesses' testimony to oppose his version of the
> facts, and our judicial system leaves credibility determinations to the jury. And
> given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory
> problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads
> alleges that his injuries resulted from a beating rendered without resistance or
> provocation. If believed by the jury, the events he describes are sufficient to
> support a claim of violation of clearly established law under Graham v. Connor,
> 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v.

Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes,

United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal

question of qualified immunity and "determine whether plaintiff's factual allegations are

sufficiently grounded in the record such that they may permissibly comprise the universe of facts

that will serve as the foundation for answering the legal question before the court," before

inquiring into whether there are genuine issues of material fact for resolution by the jury.

584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th

Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes

are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## RELEVANT NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  See Coffey v. United States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(citing Herrera v. Quality Pontiac, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003)).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825 (1983), overruled on other grounds by Folz v. State, 1990-NMSC-075, ¶ 3, 797 P.2d 246, 249 (1990).  Generally, negligence is a question of fact for the jury.  See Schear v. Bd. of County Comm'rs, 1984-NMSC-079, ¶ 4, 672, 687 P.2d 728, 729 (1984).  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant." Schear v. Bd. of County Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729.  "Whether a duty exists is a question of law for the courts to decide." Schear v. Bd. of County Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons." Baxter v. Noce, 1988-NMSC-024, ¶ 11, 51, 752 P.2d 240, 243 (1988).

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owed a duty to the plaintiff.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186.  The New Mexico courts have recognized that,

"[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 143, 45 P.3d 80, 84 (Ct. App. 2002).  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84.  "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, ¶ 11, 626, 875 P.2d 379, 382 (1994).

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194.  "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in

light of all surrounding circumstances of the present case . . . ."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.  "It need not be the only cause, nor the last nor nearest cause."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.  "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## LAW REGARDING AN EMPLOYER'S DUTY TO INDEPENDENT CONTRACTORS

"[G]enerally, the employer[16] of an independent contractor is not liable for injuries to an employee of the independent contractor."  Valdez v. Cillesson & Son, Inc., 1987-NMSC-015,¶ 21, 734 P.2d 1258.  See Sherman v. Cimarex Energy Co., 2014-NMCA-026, ¶ 8, 318 P.3d 729, 731.  The rule's rationale "is that the independent contractor, free to achieve a legal result (set by [employer]) by any means it chooses, bears the risk should that operation, negligently performed, cause physical harm to others."  Sherman v. Cimarex Energy Co., 2014-NMCA-026, ¶ 8, 318 P.3d at 731 (alterations in original).  There are, however, two exceptions: (i) when the employer controls the premises; or (ii) when the employer controls the work being performed.  See Valdez v. Cillesson & Son, Inc., 1987-NMSC-015,¶ 21, 734 P.2d 1258; Sherman v. Cimarex Energy

---

[16]The Supreme Court of New Mexico has recognized that cases in this area "have frequently contained the terms 'general contractor,' 'owner,' 'lessor', 'lessee' and 'employer,' used interchangeably, to identify the permanent or temporary possessor of land in the context of the cases."  Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d 1351, 1356.  For clarity, the Court uses the terms employer or landowner to refer to the entity that hired the independent contractor.

Co., 2014-NMCA-026, ¶ 8, 318 P.3d at 731; Fresquez v. Sw. Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 31, 554 P.2d 986, 991, cert. denied, 558 P.2d 620.  In these situations, "an employer of contractors on a jobsite has a duty of reasonable care to protect persons on the premises from unreasonably dangerous conditions, including employees of those contractors." Hinger v. Parker & Parsley Petroleum Co., 1995-NMCA-069, ¶ 22, 902 P.2d 1033, 1042.  See Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d 1351, 1356; Fresquez v. Sw. Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 26, 554 P.2d at 991.  Again, however, to owe such a duty, employers must have control over the premises or the independent contractor's performance of its work.

> Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed.

Fresquez v. Sw. Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 26, 554 P.2d at 991-92.

"[A]n employer's duty to provide a safe work place for employees of independent contractors is not absolute."  Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d at 1356. See New Mexico Electric Serv. Co. v. Montanez, 1976-NMSC-028, ¶¶ 14-15, 551 P.2d 634, 638 (concluding that an employer of an independent contractor owed no duty to the independent contractor's injured employee).  The Court of Appeals of New Mexico has stated: "The extent and nature of the duty is often a function of the degree of control or power retained by the employer over the job."  Hinger v. Parker & Parsley Petroleum Co., 1995-NMCA-069, ¶ 22, 902 P.2d at 1042.

The Court of Appeals of New Mexico has stated:

> In order to hold an owner liable to an employee of an independent contractor for breach of the duty to provide a safe work place, the employee must show that the owner retained at least some specific control over the premises during the performance of the work, or over the instrumentality that proximately caused the employee's injury.

Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124.   New Mexico courts have previously considered how much control an employer must exercise to be liable.  In Fresquez v. Sw. Indus. Contractors & Riggers, Inc., the Court of Appeals of New Mexico held that, "absent a showing that a landowner has control over the premises involved, and the work being performed, an owner is not liable for injuries resulting from the condition of the premises or from the manner in which the work is performed."  Requarth v. Brophy, 1990-NMCA-116, ¶ 11, 801 P.2d at 124 (describing the holding in Fresquez v. Sw. Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 26, 554 P.2d at 986).  The Court of Appeals of New Mexico has stated that, even though the general contractor had the right to "stop the subcontractor from proceeding with the work" if it observed the subcontractor engaging in dangerous practices, this was insufficient to constitute control.  See 1976-NMCA-090, ¶ 39, 554 P.2d 992-93.  Similarly, in Tipton v. Texaco, Inc., the Supreme Court of New Mexico recognized that an owner's general control over the premises is not usually sufficient to subject the owner to liability if the employee's injury resulted from a hazard that the independent contractor created and that was unknown to the owner.  See 1985-NMSC-108, ¶ 20, 712 P.2d at 1356.

The Court of Appeals of New Mexico has stated that, in addition to showing control, the plaintiff "must also show that his injury was proximately caused by the owner's failure to exercise that control in a reasonable manner."  Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124.  The New Mexico Court of Appeals, in accordance with the Supreme Court of New

Mexico's decisions in Tipton v. Texaco and Mozert v. Noeding, 1966-NMSC-113, 415 P.2d 364, concluded that "an owner of property has a duty commensurate with the provisions of Restatement (Second) of Torts, Section 343, to provide a safe work place for employees of a subcontractor working on the premises."  Requarth v. Brophy, 1990-NMCA-116, ¶ 10, 801 P.2d 121, 124.  See Mozert v. Noeding, 1966-NMSC-113, ¶ 15, 415 P.2d at 400 (quoting § 343 of the Restatement (Second) of Torts with approval); Sherman v. Cimarex Energy Co., 2014-NMCA-026, ¶ 8, 318 P.3d at 731.  In Mozert v. Noeding, the Supreme Court of New Mexico laid out the conditions for a landowner's liability for injuries to invitees resulting from a condition on his land pursuant to § 343 of the Restatement (Second) of Torts, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) Should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) Fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343.  See Mozert v. Noeding, 1966-NMSC-113, ¶ 15, 415 P.2d at 400.

Accordingly, the plaintiff must also show: (i) that the owner knew or should have discovered the dangerous condition; (ii) that the hazard involved an unreasonable risk of harm; and (iii) that the employer should have expected that the employee would not discover the danger or fail to protect himself against it.  See Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d at 1356; Mozert v. Noeding, 1966-NMSC-113, ¶ 15, 415 P.2d at 400, 367; Requarth v.

Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124-25; RESTATEMENT (SECOND) OF TORTS § 343. Thus, even if a dangerous condition exists, the injured plaintiff must show that the landowner "should have expected that the employee would not discover or realize the danger, or would fail to protect himself against it." Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124.

## ANALYSIS

The Supreme Court of New Mexico's holding in Ford did not alter the duty that employers owe to independent contractors' employees. Employers must provide a safe work place only if they retain control over the premises or the manner of work. Because Home Depot did not retain control, it owed Valdez no duty to provide a safe place to work. Furthermore, even if Home Depot owed Valdez such a duty, Valdez could not show that Home Depot caused his injury as a matter of law. For these reasons, the Court grants Home Depot's Motion.

## I.   FORD DOES NOT GOVERN AN EMPLOYER'S DUTY OF CARE TO EMPLOYEES OF INDEPENDENT CONTRACTORS.

The Plaintiffs assert that Ford altered the duty that employers owe to independent contractors. See Response at 6. It did not. Ford addressed a landowner's duty to three distinct categories of people: licensees, invitees, and business visitors. See Ford, 1994-NMSC-077, ¶ 1, 879 P.2d at 767. A "business visitor is a person who is invited to enter, or permitted to remain on, the premises [in the possession] of another for a purpose connected with business dealings with the [owner] [occupant] of the premises." Ford, 1994-NMSC-077, ¶ 5, 879 P.2d at 768 (brackets in original). A "public invitee is defined as 'a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.'" Ford, 1994-NMSC-077, ¶ 5, 879 P.2d at 768 (quoting the Restatement (Second) of Torts § 332(2)). "A licensee, on the other hand, is 'a person who is privileged to enter or remain on land

only by virtue of the possessor's consent.'"  Ford, 1994-NMSC-077, ¶ 5, 879 P.2d at 768

(quoting the Restatement (Second) of Torts § 330).  After carefully describing the categories, the

Supreme Court of New Mexico then "eliminated the distinction between licensees and invitees,

and substitute[d] instead a single standard of reasonable care under the circumstances, while

retaining trespassers as a separate classification."  Ford, 1994-NMSC-077, ¶ 7, 879 P.2d at 769.

See id., 1994-NMSC-077, ¶ 11, 879 P.2d at 770 (limiting the "holding to licensees and

invitees").

Although independent contractors could follow the law of invitees, see Fresquez v. Sw.

Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 30, 554 P.2d at 991 (stating that an

independent contractor was an invitee), New Mexico courts treat an employer's duty to

independent contractor employees differently.  See Sherman v. Cimarex Energy Co., 2014-

NMCA-026, ¶ 8, 318 P.3d at 731.  New Mexico courts have long recognized that the employer's

duty to independent contractor employees arises only when the employer has control over the

premises or the manner of work the employees perform.  See Tipton v. Texaco, Inc., 1985-

NMSC-108, ¶ 20, 712 P.2d at 1356 (noting that "[t]his court has held that an employer's duty to

provide a safe work place for employees of independent contractors is not absolute," and

requiring the plaintiff to show that the employer controlled the premises or the manner of work);

Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124 (describing how New Mexico law

on premises liability does not squarely address the independent contractor situation, and

demonstrating that independent contractors are a separate category, which the Supreme Court of

New Mexico's rulings on licensees and invitees did not address); New Mexico Electric Serv. Co.

v. Montanez, 1976-NMSC-028, ¶¶ 14-15, 551 P.2d at 638 (applying a different standard of duty

to employers of independent contractors).  In fact, New Mexico courts have been hesitant to subject employers of independent contractors to the same liability standards as employers in general premises liability cases:

> The employer generally hires an independent contractor to perform work that he is not equipped or trained to do.  We see no reason why the employer should become the insurer of the employees of an independent contractor.  Moreover, even in cases where the independent contractor has failed to obtain workmen's compensation insurance, as may be the case here, the employer of the contractor should not be penalized as a result.

New Mexico Electric Serv. Co. v. Montanez, 1976-NMSC-028, ¶ 16, 551 P.2d at 638. Moreover, the purpose for abolishing the different standards for licensees and invitees does not apply to independent contractors.  In Ford, the Supreme Court of New Mexico abolished the distinctions between licensees and invitees because determining a landowner's duty with respect to each category of persons "produced confusion and conflict."  1994-NMSC-077, ¶ 11, 879 P.2d at 770.  See 1994-NMSC-077, ¶ 11, 879 P.2d at 770 n.3 (describing how "the abundance of jury instructions on the duty of care owed to licensees and invitees . . . [is] confusing and reinforces our decision today to eliminate the common-law distinctions of licensees and invitees").  Because courts have treated independent contractors differently, eliminating the distinction as to them would not dispel any confusion the Supreme Court of New Mexico was attempting to eliminate.

In short, Ford did not change the analysis as to an employer's duty to independent contractor employees.  Rather, New Mexico courts continue to apply § 343 of the Restatement (Second) of Torts to determine an employer's liability to an independent contractor's employee. See McDaniel v. United States, 53 F. App'x 8, 12 (10th Cir. 2002)(describing an employer's liability under New Mexico law and citing the standards set forth in Requarth v. Brophy, 1990-

NMCA-116, ¶ 12, 801 P.2d at 124).   Accordingly, in 2002 in <u>McDaniel v. United States</u>,

pursuant to New Mexico law, the Tenth Circuit applied § 343 of the Restatement (Second) of

Torts to determine an employer's liability to an employee of the independent contractor it hired

to work on its premises.   <u>See</u> 53 F. App'x at 12.   The Tenth Circuit continued to recognize the

separate standards that New Mexico law created for independent contractors in <u>Tipton v. Texaco,</u>

<u>Inc.</u> and <u>Requarth v. Brophy</u>.   <u>See</u> 53 F. App'x at 12.   It held that the employer of the

independent contractor was not liable for the employee's injury, despite its duty to provide a safe

work place.   <u>See</u> 53 F. App'x at 12.

Similarly, New Mexico courts have recognized the continued application of § 343 to

determine a landowner's liability to employees of independent contractors.   In <u>Sherman v.</u>

<u>Cimarex Energy Co.</u>, the Court of Appeals of New Mexico first determined whether the

employer retained a sufficient level of control to owe the independent contractor employees a

duty, and then it determined whether the employer could be liable under the Restatement.   <u>See</u>

2014-NMCA-026, ¶ 8, 318 P.3d at 731.   In <u>Stinson v. Berry</u>, 1997-NMCA-076, 943 P.2d 129,

the Court of Appeals of New Mexico considered whether a landowner owed a duty to an

employee of an independent contractor working on his land.   <u>See</u> 1997-NMCA-076, ¶ 12, 943

P.2d at 133.   The Court of Appeals articulated the landowner's duty as the one set forth in

<u>Requarth v. Brophy</u>, 1990-NMCA-116, ¶ 12, 801 P.2d at 124-25 -- not the one stated in <u>Ford</u>.

<u>See</u> 1997-NMCA-076, ¶ 12, 943 P.2d at 133.   To impose a duty, therefore, it required the injured

plaintiff to show that the landowner exercised some degree of control "over the premises and the

details of the work being performed."   1997-NMCA-076, ¶ 13, 943 P.2d at 133.   Because the

uncontested facts showed that the landowner "exercised no control at all over the business . . . or

its use of the premises," the Court of Appeals granted summary judgment.  1997-NMCA-076, ¶ 13, 943 P.2d at 133.  Similarly, in Pollard v. Westinghouse Electric Corp.. 1995-NMCA-038, 895 P.2d 683, the Court of Appeals of New Mexico again applied the standard set forth in Requarth v. Brophy and § 343 of the Restatement (Second) of Torts to determine whether a general contractor owed a duty to the employees of a subcontractor.  See 1995-NMCA-038, ¶ 6, 895 P.2d at 685.  "In the context of Section 343, a possessor of land has a duty to exercise reasonable care to provide a safe work place for employees (invitees) of a contractor or subcontractor working on the premises, at least to the extent the possessor retains control over the premises."  Pollard v. Westinghouse Elec. Corp.. 1995-NMCA-038, ¶ 6, 895 P.2d at 685 (citing Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d at 1356, and Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124).  Finally, in 2012, in Hicks v. Kollar Construction, Inc., 2012 WL 1724685 (N.M. Ct. App. April 19, 2012)(unpublished), the Court of Appeals of New Mexico again applied the standard set forth in Requarth v. Brophy and § 343 of the Restatement (Second) of Torts in determining the duty that an employer owes to an employee of an independent contractor.  See Hicks v. Kollar Construction, Inc., 2012 WL 1724685, at *1. The Court of Appeals of New Mexico found that, even if the defendant homeowner exercised a sufficient degree of control to satisfy Requarth v. Brophy's test, the plaintiff could not show that the homeowner knew or should have known about a dangerous condition, or that the employee would not discover the danger.  See Hicks v. Kollar Construction, Inc., 2012 WL 1724685, at *1.

In the end, the Court concludes that New Mexico has made the decision that, as a general matter, when a company hires an independent contractor, the independent contractor will be

liable for any injuries to its employees.[17]   See Valdez v. Cillesson & Son, Inc., 1987-NMSC-015,¶ 21, 734 P.2d at 1262.   This allocation of risk makes sense in the modern commercial world.   When a company hires an independent contractor, it does not want to do that work, supervise the employees, pay the employees, or pay their benefits.   See Sherman v. Cimarex Energy Co., 2014-NMCA-026, 318 P.3d at 731; Marc M. Schneier, The Independent Contractor Rule: The Shifting Bedrock of Construction Accident Law, CONSTRUCTION BRIEFINGS No. 2002-8, at 2 (2002).   The hiring company wants the work done, but it largely does not care how it gets done or who does it.   New Mexico law will, as a general matter, leave that allocation of risk to the parties.   The law will only shift that risk to the hiring company when the hiring company does not really leave the work to the independent contractor or knows there is an unreasonably dangerous condition that the independent contractor will not discover.   See Valdez v. Cillesson & Son, Inc., 1987-NMSC-015,¶ 21, 734 P.2d at 1262; Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d at 1351; RESTATEMENT (SECOND) OF TORTS § 343.   As long as the hiring company leaves the work largely to the independent contractor and does not fail to disclose an unreasonably dangerous condition to the independent contractor, the New Mexico law will leave the risk to the independent contractor.   For instance, if an oil company hires a drilling company, the oil company should not be responsible for the drilling company's employees unless it is going to supervise the work or knows of unreasonably dangerous conditions about which the

---

[17]"The federal court is bound to follow New Mexico law." Levin v. Airgas Sw., Inc., 2006 WL 1305040, *7 (D.N.M. April 30, 2006)(Browning, J.).   When the Supreme Court of New Mexico has not decided the issue the Court confronts, it must predict how the Supreme Court of New Mexico would rule.   See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 708 F. Supp. 2d 1209, 1257 (D.N.M. 2010)(Browning, J.).   The Court is not bound to apply the Court of Appeals of New Mexico's holdings when it believes that the Supreme Court of New Mexico would arrive at a different conclusion.   See Anderson Living Trust v. ConocoPhillips Co., LLC, 952 F. Supp. 2d 979, 1033 n.8 (D.N.M. 2013)(Browning, J.).

drilling company would not know.  While the application of the presumption is obviously very fact-specific, this is the law that New Mexico has chosen, not some bright-line rule that always predicts the outcome.

The Court has relied heavily on Supreme Court of New Mexico cases from 1966 in Mozert v. Noeding, 1966-NMSC-113, ¶ 15, 415 P.2d at 367, to 1987 in Valdez v. Cillesson & Son, Inc., 1987-NMSC-015, ¶ 21, 734 P.2d at 1262.  The Court of Appeals of New Mexico has more recent cases.  See, e.g., Sherman v. Cimarex Energy Co., 2014-NMCA-026, 318 P.3d at 731.  The Court is confident that the Court of Appeals of New Mexico would reach the same result that the Court reaches here as to the state law.  The Supreme Court of New Mexico has not, however, revisited the state law for independent contractors.  The age of the Supreme Court precedent gives the Court pause.  While the Court concludes that Ford did not implicitly change New Mexico's adherence to the Restatement (Second) of Torts regarding independent contractors, the Court remains concerned about whether the Supreme Court of New Mexico, if ultimately presented with the question again, might go a different direction.  In spite of the Court's concerns, it determines that the Supreme Court of New Mexico's reasoning in Ford would not apply to the independent contractor situation at issue here.  The Supreme Court of New Mexico's persistent reluctance to impose an overly burdensome duty on employers who hire independent contractors leads the Court to conclude that it would continue to consider whether an employer owes a duty to an independent contractor's employees under the Restatement (Second) of Torts.

## II.   **HOME DEPOT DID NOT OWE VALDEZ A DUTY TO PROVIDE A SAFE WORK PLACE.**

The Plaintiffs cannot show, as a matter of law, that Home Depot owed Valdez a duty to provide a safe place to work.  First, Home Depot did not owe the Plaintiffs a duty on the basis that it controlled the premises.  Although Home Depot owned the racking and order picker, "liability depends on the injury resulting from 'a hazard in joint space which has not been created by the employer of the workman injured.'"  Fresquez v. Sw. Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 34, 554 P.2d at 992 (citing Chesin Const. Co. v. Epstein, 8 Ariz. App. 312, 317, 446 P.2d 11, 16 (Ariz. Ct. App. 1968)).  Here, Home Depot did not create a "hazard in joint space."  Fresquez v. Sw. Indus. Contractors & Riggers, Inc., 1976-NMCA-090, ¶ 34, 554 P.2d at 992.  Valdez created the hazard.  See Motion ¶¶ 12, 16, at 4; Response ¶ 1, at 2.  The Plaintiffs show only that Valdez was injured when he used equipment that he was unauthorized to use and not trained in using, and that he did so without following basic safety procedures like using a harness.  See Motion ¶¶ 12, 16, at 4; Response ¶ 1, at 2.  Even if there were gaps between the boards, Valdez created the hazard by using the order picker to reach the top shelves without permission or a harness.  The hazardous condition was therefore not the potential existence of gaps, but moving heavy equipment without a harness on high shelving that could possibly have gaps.  See Hill v. Texaco, Inc., 674 F.2d 447, 449 (5th Cir. 1982)(concluding that the employer owed no duty to an independent contractor's employee under § 343 of the Restatement (Second) of Torts when the employer did not know that the independent contractor was not using safety equipment).  Valdez created that situation, not Home Depot.  The only way Home Depot could have prevented that hazard was by monitoring its independent contractors to ensure they followed the rules, which would have defeated the purpose of hiring an independent contractor.

Thus, although Home Depot owned the order picker that Valdez used to reach the top shelving, Home Depot did not create the dangerous situation because Valdez was not supposed to use the equipment.

Moreover, although Home Depot owned the equipment, it did not "control" the premises or the equipment sufficient to give rise to a duty.  See Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124 (requiring that the employer retain "some specific control over the premises during the performance of the work" to give rise to a duty); Parsons v. Blount Bros. Construction Co., 281 F.2d 414, 416-17 (6th Cir. 1960)(requiring that the employer not only own the premises, but also control the premises in terms of supervising the subcontractor's activities, to owe the subcontractor's employees a duty to provide a safe work place).

To establish that Home Depot owed Valdez a duty, therefore, the Plaintiffs must show that Home Depot exercised "specific control" over Crossmark Holdings' operations, such that Valdez was "not entirely free to do the work in his own way."  Sherman v. Cimarex Energy Co., 2014-NMCA-026, ¶ 14, 318 P.3d at 733.  See Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124.  This case is unlike Pollard v. Westinghouse Electric Corp.. 1995-NMCA-038, 895 P.2d 683, in which the Court of Appeals of New Mexico determined that a general contractor -- Westinghouse Electric -- owed a duty of care to a subcontractor's employees because Westinghouse retained the right to direct the subcontractor to take certain actions to protect the subcontractor's employees.  See 1995-NMCA-038, ¶ 7, 895 P.2d at 686.  Additionally, Westinghouse Electric reserved the power of approval over promotions and the hiring of the subcontractor's employees.  See 1995-NMCA-038, ¶ 7, 895 P.2d at 686.  Further, the Court of Appeals of New Mexico found that Westinghouse retained control because: (i) Westinghouse

Electric required compliance by the subcontractor's employees to Westinghouse's safety manual; (ii) Westinghouse Electric instructed the subcontractor to correct specific safety deficiencies; (iii) Westinghouse Electric retained the right to approve the safety changes the subcontractor made; and (iv) Westinghouse Electric expressed the ability to control the subcontractor's employment decisions.  See 1995-NMCA-038, ¶ 7, 895 P.2d at 686.

Here, Home Depot had no such control over Valdez' or Crossmark Holdings' operations. First, it did not reserve the right to impose safety requirements on Crossmark Holdings' employees.  Rather, Crossmark Holdings imposed its own rules and requirements on its employees.  See Motion ¶ 25, at 5; Response ¶ 1, at 2.  Home Depot had no control over promotions or employment decisions of Crossmark Holdings' employees.  See Motion ¶ 27, at 5. Further, unlike in Pollard v. Westinghouse Electric Corp., Home Depot did not: (i) require Crossmark Holdings employees to comply with Home Depot's manuals; (ii) instruct Crossmark Holdings or Valdez to correct any specific safety deficiencies; or (iii) reserve the right to approve policy changes that Crossmark Holdings made.  See Pollard v. Westinghouse Elec. Corp.. 1995-NMCA-038, ¶ 7, 895 P.2d at 686; Motion ¶ 25-26, at 5; Response ¶¶ 1, 6, at 2, 3.  Importantly, Home Depot employees did not supervise Crossmark Holdings' employees as they performed their work.  See Motion ¶ 28, at 5; Response ¶ 1, at 2.  The only control that Home Depot exercised over the premises or operations was in hiring Crossmark Holdings to perform certain work and encouraging Crossmark Holdings to complete that work quickly.  See Reply at 7.  As the Court of Appeals of New Mexico found in Sherman v. Cimarex Energy Co., it "is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not

necessarily be followed, or to prescribe alterations and deviations." 2014-NMCA-026, ¶ 14, 318 P.3d at 731 (quoting the Restatement (Second) of Torts § 414). Rather, the employer must retain a right of supervision so that the contractor "is not entirely free to do the work in his own way." Sherman v. Cimarex Energy Co., 2014-NMCA-026, ¶ 14, 318 P.3d at 731 (quoting the Restatement (Second) of Torts § 414). Home Depot did not provide Valdez with any of the tools necessary for his job, nor did it instruct Valdez as to which tools or safety equipment he should bring. See Motion ¶ 26, at 5; Response ¶ 6, at 3. Crossmark Holdings provided most of Valdez' equipment or instructed him to bring certain equipment. See Motion ¶ 26, at 5; Response ¶ 6, at 3. Crossmark Holdings had complete control of Valdez' performance; Valdez answered only to Jones, and not to Home Depot, as his boss. See Motion ¶ 27, at 5.

Like in Stinson v. Berry, where the Court of Appeals of New Mexico determined that a landowner owed no duty to the independent contractor's injured employee, see 1997-NMCA-076, ¶ 13, 943 P.2d at 133, Home Depot "did not maintain any control over the operation of the company," Crossmark Holdings, 1997-NMCA-076, ¶ 13, 943 P.2d at 133. Other than hiring Crossmark Holdings to perform specific tasks, Home Depot "did not participate in, supervise, or direct" the work that Crossmark Holdings performed. Stinson v. Berry, 1997-NMCA-076, ¶ 13, 943 P.2d at 133. See Motion ¶ 28, at 5; Response ¶ 1, at 2. When Valdez asked Home Depot employees for help operating the order picker, they refused. See Motion ¶ 11, at 3; Response ¶ 1, at 2. In sum, like in Stinson v. Berry, Home Depot, "did not control the day-to-day operations" of Valdez or Crossmark Holdings. Stinson v. Berry, 1997-NMCA-076, ¶ 13, 943 P.2d at 133. Accordingly, with no control, Home Depot owed Valdez no duty.

A jury could not reasonably conclude that Home Depot exercised more than a mere general control over the project and the premises. Compare Valdez v. Cillessen & Son, Inc., 1987-NMSC-015, ¶ 21, 734 P.2d at 1263 (concluding that summary judgment was precluded where the plaintiff showed that the general contractor issued detailed instructions regarding work, fired employees of subcontractors, and assigned employees to tasks other than those for which hired); Hennigan v. Atlantic Ref. Co., 282 F. Supp. 667, 676–77 (E.D. Pa. 1967)(finding that the defendant retained control of work where it drew the work plans, decided the method of work, and required its inspector to be at the work site whenever work was being done), cert. denied, 395 U.S. 904 (1969); Hobbs v. Mobil Oil Corp., 445 P.2d 933, 935-36 (Alaska 1968)(concluding that a general contractor who, among other things, required daily reports, specified job designations, required compliance with its work rules and regulations, and retained the right to terminate employees, might have been found to retain enough control to be liable for the injury to the independent contractor's employees); Weber v. N. Illinois Gas Co., 10 Ill. App. 3d 625, 295 N.E. 2d 41, 46, 50-51 (1973)(holding that summary judgment was precluded where a general contractor could remove any worker it deemed unfit or unskilled, could order unsafe equipment removed, could order unsafe work be stopped, and required its inspector to be on site whenever the contractor worked); with Requarth v. Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124 (finding summary judgment proper where the plaintiff made an insufficient showing that owner had any right of control or reasonably should have known that dangerous condition existed). When viewed in the light most favorable to the Plaintiffs, the evidence does not give rise to a reasonable inference that Home Depot retained enough control over the means and

manner of Valdez' or Crossmark Holdings' work or the work site.  Thus, Home Depot did not

have a duty, as set forth in the Restatement, to provide a safe place to work.

### III.   EVEN IF HOME DEPOT HAD A DUTY TO PROVIDE A SAFE WORK PLACE, HOME DEPOT IS NOT LIABLE UNDER § 343 OF THE RESTATEMENT.

Even if Home Depot owed Valdez a duty, the Plaintiffs still cannot demonstrate that

Home Depot caused his injury as a matter of law.  As stated in the Restatement (Second) of

Torts, Valdez must show: (i) that the owner knew or should have discovered the dangerous

condition; (ii) that the hazard involved an unreasonable risk of harm; and (iii) that the employer

should have expected that the employee would not discover the danger or fail to protect himself

against it.  See Tipton v. Texaco, Inc., 1985-NMSC-108, ¶ 20, 712 P.2d at 1356; Mozert v.

Noeding, 1966-NMSC-113, ¶ 15, 415 P.2d at 400, 367; Requarth v. Brophy, 1990-NMCA-116, ¶

12, 801 P.2d at 124-25; RESTATEMENT (SECOND) OF TORTS § 343.

Like in McDaniel v. United States, "in order to prevail under § 343, plaintiff must show

that [Home Depot] 'should have expected that the employee would not discover or realize the

danger, or would fail to protect himself against it.'"  53 F. App'x at 12 (quoting Requarth v.

Brophy, 1990-NMCA-116, ¶ 12, 801 P.2d at 124-25).  In McDaniel v. United States, the Tenth

Circuit concluded that, under § 343, the employer was not liable to the independent contractor's

employees for two reasons.  See 53 F. App'x at 12.  First, the independent contractor and its

employees knew about the dangers the work involved.  See 53 F. App'x at 12.  Second, the

independent contractor was responsible for the safety of its own employees.  See 53 F. App'x at

12.  Thus, the Tenth Circuit held that the employee's claim failed under § 343.  See 53 F. App'x at 12.[18]

This case presents a situation similar to that in McDaniel v. United States.  Like in McDaniel v. United States, the Plaintiffs introduce no evidence to show that Crossmark Holdings' employees would not discover the danger of using an order picker without authorization, and moving heavy equipment on the racking without following basic safety guidelines, like using a harness.  In fact, Valdez concedes his awareness of the danger and his failure to protect himself against it.  First, he knew he needed to maintain a conscious awareness of where he stepped because the boards might have gaps.  See Motion ¶ 21, at 4; Response ¶ 1, at 2.  Thus, he knew the danger of working in the racking.  Second, he knew he was not authorized to use the order picker or trained in how to operate it.  See Motion ¶ 12, at 4; Response ¶ 1, at 2.  Third, he knew he should have used a harness.  See Motion ¶ 16, at 4; Response ¶ 1, at 2.  Accordingly, he knew the danger of operating equipment he was not trained in using.  Fourth, Crossmark Holdings was responsible for training its own employees on safety procedures and requiring them to wear appropriate materials to ensure their safety.  See Motion ¶¶ 25-26, at 5, Response ¶ 1, at 2.

Home Depot therefore had no reason to predict that it would additionally need to instruct Crossmark Holdings' employees about the dangers of moving heavy equipment on the racking

---

[18]District courts within the Tenth Circuit are bound to follow the Tenth Circuit's decisions.  See Citizen Band Potawatomi Indian Tribe of Okla. v. Okla. Tax Comm'n, 969 F.2d 943 (10th Cir. 1992)("As the district court is bound by our mandate, we of course are bound by the Supreme Court's mandate."); United States v. Sandoval, 2006 WL 1228953, at *10 (D.N.M. March 7, 2006)(Browning, J.)("The Tenth Circuit's precedent, however, binds the Court.  The Court is not free to decide that the Supreme Court will, at some future point, overrule [a Tenth Circuit decision].").

and using unauthorized equipment without appropriate safety gear.  The Plaintiffs present no facts suggesting that Home Depot should have known that Crossmark Holdings' employees would disregard Crossmark Holdings' safety procedures.  Thus, like in <u>McDaniel v. United States</u>, Crossmark Holdings knew about the dangers its employees would face, and imposed safety requirements to keep its employees safe.  <u>See</u> 53 F. App'x at 12.  Because Crossmark Holdings imposed its own safety requirements, Home Depot had reason to believe that employees would follow them and use those safety measures.  On these undisputed facts, the Court can determine as a matter of law that Valdez cannot prove the elements of his negligence claim under New Mexico law.  <u>See</u> RESTATEMENT (SECOND) OF TORTS § 343 ("[T]he possessor is under no duty to protect the licensee against dangers of which the licensee knows or has reason to know.").

**IV.    THE PLAINTIFFS DO NOT SHOW GOOD CAUSE FOR WHY THE COURT <u>SHOULD VACATE THE TRIAL.</u>**

As the Court stated at the hearing, the Plaintiffs do not at this time establish good cause to vacate the trial.  They argue that they seek to vacate the trial to allow them to demonstrate that Valdez' fall at Home Depot caused his current injuries, including his CRE.  <u>See</u> Motion to Vacate ¶¶1-3, at 1.  The Plaintiffs put forth no evidence at this time to demonstrate causation between the fall and Valdez' current medical condition -- CRE.  Thus, their basis for vacating the trial is, at this time, too speculative.  Accordingly, for the reasons stated at the hearing, the Court will deny the Motion to Vacate without prejudice to the Plaintiffs renewing the Motion to Vacate again if they develop more evidence that links the injury from the fall to Valdez' CRE.

**IT IS ORDERED** that: (i) the requests in the Defendant's Motion for Summary Judgment and Memorandum in Support, filed May 7, 2015 (Doc. 39), are granted; and (ii) the

Plaintiffs' Motion to Vacate Trial, filed June 15, 2015 (Doc. 43), is denied without prejudice to renewing if the Plaintiffs uncover evidence that links the fall with Valdez' current medical condition.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Michael J. Doyle
Los Lunas, New Mexico

 *Attorney for the Plaintiffs*

Meena H. Allen
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

-- and --

Arthur K. Smith
Law Offices of Arthur K. Smith
Allen, Texas

 *Attorneys for the Defendants*

- 42 -